## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: Raymond Joseph Scully, Jr. and | * | CASE NO. 18-50993 |
| Shirley Hue Scully | * | Chapter 7 |
| Debtor(s) | * | |
| | * | |
| | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*

Pedestal Bank                                                      Adversary No. 18-05041

**Plaintiff(s)**

v.

Raymond J. Scully, Jr., et al.

**Defendant(s)**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### PRETRIAL STIPULATIONS

Pursuant to the Court's Scheduling Order, the parties, Pedestal Bank, and Raymond and

Shirley Scully, hereby stipulate to the following issues:

### A.  Basis of Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334.   Venue

of this proceeding is proper in this District pursuant to 28 U.S.C. §1409. This adversary proceeding

is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

## B. Concise Statement of the Nature of the Action

This is an action by Pedestal Bank to determine whether its claim against Debtors, Raymond Scully and Shirley Scully, is excepted from discharge under Section 523 of the Bankruptcy Code.

## C. A Brief, General Statement of each Party's Case or Contentions

**Pedestal Bank:**

Pedestal Bank contends that its claim against Debtors, Raymond Scully and Shirley Scully, is excepted from discharge under Section 523 of the Bankruptcy Code, by reason of the Scullys' actions and their resulting injury to Coastal Commerce Bank, including intentional actions, fraud, and fraudulent transfers. The Scullys transferred substantial immovable properties, vehicles, and cash to their children, grandchildren, other relations, and corporate entities controlled by them in an effort to avoid debts to Coastal Commerce. These actions constitute actual fraud, a fraudulent transfer scheme, or willful and malicious injury to Coastal Commerce. The actions by the Scullys also included misrepresentations, fraud by failures of omission, which are sufficient to find an exception to discharge.

**Debtors:**

The Scullys contend that their debt to Pedestal Bank was discharged under Section 727 and was not excepted from discharge under Section 523. The transfers of property made by the Scullys were all done for legitimate business and estate planning reasons. None of the transfers were made to hide assets from creditors. The Scullys also did not have a duty to disclose each of these transactions to Coastal Commerce Bank at the time they were made.

2

**D. A Concise Statement of Those Facts which are Admitted and Will Require No Proof at Trial, Together with any Reservations Directed to such Admissions**

**Background**

1. Beginning in 2013, Raymond J. Scully was a member of SM Energy, L.L.C. ("*SM Energy*"), a limited liability company that is incorporated under the laws of the State of Louisiana, with its principal place of business (now closed) in St. Mary Parish, Louisiana.

2. Mr. Scully is domiciled in St. Martin Parish.

3. Shirley Scully is the wife and joint debtor with Raymond J. Scully, and is also domiciled in St. Martin Parish.

4. The Scullys are residents of St. Martin Parish, Louisiana.

5. The Plaintiff, Pedestal Bank, is a creditor of the Scullys and is a banking company organized and existing by virtue of the laws of the State of Louisiana, with its principal place of business in Terrebonne Parish, Louisiana.

6. Pedestal Bank's predecessor in interest, Coastal Commerce, was a banking company organized and existing by virtue of the laws of the State of Louisiana, with its principal place of business in Terrebonne Parish, Louisiana.

7. In the 1980s, Raymond Scully was part owner of a boat business called Scully Brothers Boat Building.

8. Scully previously signed a personal guaranty in connection with Whitney Bank's loan to the business, Scully Brothers Boat Building.

9. Scully Brothers Boat Building defaulted on its loans from Whitney Bank after the collapse in oil prices in the 1980s.

10. Raymond Scully filed a personal Chapter 7 bankruptcy in the Eastern District of Louisiana on February 7, 1986.

## SM Energy Transaction

11. SM Energy, LLC entered into a commercial loan transaction with Coastal Commerce in 2014 (the "*SM Energy Loan*").

12. The amount of credit Coastal Commerce extended to SM Energy, LLC was approximately $5 Million, consisting of a term note and a revolving line of credit.

13. John A. Lancon was a member of the SM Energy, along with the defendant, Raymond J. Scully, Jr. Both men agreed to guaranty the debt of SM Energy, LLC and signed commercial guaranties on or about March 31, 2014.

14. Prior to the execution of the guaranty, and prior to Coastal Commerce's extension of credit, Raymond Scully submitted a personal financial statement to Coastal Commerce Bank in connection with the loan (the "*Financial Statement*").

15. Scully first submitted the Financial Statement on August 31, 2013 to First National Bank of Jeanerette on a prior loan to SM Energy. Subsequently, SM Energy was a participant in the SM Energy Loan with Coastal Commerce Bank.

16. Scully later provided a copy of the same Financial Statement to Coastal Commerce Bank.

## Default and Notice of Default

17. The default letter that was sent to Raymond Scully was signed for by Shirley Scully on April 26, 2016.

18. On or about May 5, 2016, Raymond Scully provided a "Proposed plan" for workout of the SM Energy Loan.

4

## Roxie Property

19. The Scullys and David Acosta owned the Roxie Property at the time of the Financial Statement in August 2013. The Roxie Property is an undeveloped rural property located in Mississippi.

20. Scully and David Acosta sold the Roxie Property in May 2014 for a purchase price of $995,000.

21. Scully and David Acosta received approximately $188,000 in sale proceeds from the Roxie Property.

## Stephensville Property

22. The Scullys owned the Stephensville Property in indivision at the time of the Financial Statement in August 2013. The Stephensville Property is a residential immovable property located on in an unincorporated part of St. Martin Parish.

23. The Scullys owned the Stephensville Property free and clear.

24. The Scullys donated the Stephensville Property to their daughters, Crystal S. Torgrimson, Kathy Petty, Rae Ann Richie, on or about June 1, 2015.

25. The Scullys reserved a usufruct interest in the Stephensville Property, such that they had the right to use the property for life and their daughters, Crystal S. Torgrimson, Kathy Petty, Rae Ann Richie were and are the naked owners of the property.


## Gulfport Property

26. Raymond and Shirley Scully purchased the Gulfport Property in 2011 for the purchase price of $107,000

5

27. The Scullys owned the Gulfport Property, a residential immovable property located on Swetman Blvd. in Harrison County, Mississippi at the time of the Financial Statement in August 2013.

28. The Scullys owned the Gulfport Property free and clear.

29. The Scullys sold the Gulfport Property on or about May 12, 2016 to Acosta Family Rentals, LLC.

30. Acosta Family Rentals provided a check to the closing attorney at the closing on or about May 12, 2016, in the amount of $75,000, representing the purchase price of the property.

31. At that time, in May of 2016, Coastal Commerce's loan was in default.

32. Within six (6) days after the sale of the Mississippi Property, Shirley Scully wrote three checks to David Acosta for the total amount of $75,000.

33. Acosta Family Rentals is a Louisiana limited liability company owned by David Acosta.

34. Raymond Scully regards David Acosta as his son-in-law because Acosta is married to Raymond Scully's niece, Melanie Acosta.

35. After Acosta Family Rentals, LLC obtained ownership of the property, it then marketed and sold the property to a third party in May of 2017.

36. Acosta Family Rentals sold the Gulfport Property to a third party for the purchase price of $164,000.

37. Acosta Family Rentals, LLC caused the net proceeds of the transaction to be paid to A&B Industries, LLC.

**Dayton Property**

38. Raymond and Shirley Scully did not own the Dayton Property, a residential immovable property located in Dayton, Texas, at the time of the Financial Statement in August 2013.

6

39. Raymond and Shirley Scully acquired the Dayton Property in August, 2014.

40. After they acquired it in 2014, the Scullys owned the Dayton Property free and clear.

41. The Scullys transferred the Dayton Property to their grandchildren Joshua and Jared Cheramie, on or about March 3, 2016.

42. The Scullys executed Warranty Deed pursuant which reflects that the Scullys transferred the property subject to an obligation on the part of his grandchildren to pay them $116,000, which was secured by a lien in their favor. That alleged lien was evidenced and affirmed by a Deed of Trust in their favor.

43. By virtue of the deed of trust and accompanying promissory note, Scully's grandchildren, Jared and Joshua Cheramie were obliged to pay their grandparents, the Scullys, $116,610.00 in respect of the deed of trust.

44. Under the Deed of Trust, in the event of breach or nonpayment Scully and/or Shirley Scully were entitled to take possession of the property from their grandchildren, by way of the trustee, in accordance with the procedures applicable to deeds of trust.

45. Under the Deed of Trust, the indebtedness of $116,610.00 was to be due and payable in three annual installments from Joshua and Jared Cheramie to Raymond and/or Shirley Scully.

46. On or about March 3, 2016, contemporaneously or shortly after the execution of the deed of trust, Raymond and Shirley Scully executed a letter that stated they would forgive the first installment of $39,064.

47. On or about April 4, 2017, Raymond and/or Shirley Scully executed other letters which stated that they would forgive the second installment of $40,424.80 and the third installment of $39,647.40.

7

## Porter Texas Property

48. The Scullys legally owned the Porter Property, a residential immovable property located in Liberty County, Texas, at the time of the Financial Statement in August 2013.

49. The Porter Property was subject to a mortgage in favor of a bank

50. The Scullys sold the Porter Property on or about March 13, 2018 to a third party for the price of $140,000.

51. The Scullys received $69,996.00 in sale proceeds from the sale of the property in Porter Texas

52. The Scullys distributed some of the proceeds of the sale to their daughter Kathy Scully Petty, in the amount of $34,998.

53. The Scullys distributed certain of the proceeds of the sale to their attorneys in the amount of $22,450 on March 20, 2018.


## KRC Property

54. The principal asset of KRC Properties was and is a piece of immovable property located at 1800 Badt Ave., Thibodaux, Louisiana.

55. Scully held a 100% membership interest in KRC Properties LLC when KRC purchased the property.

56. Scully held a 100% membership interest in KRC Properties, LLC, as of its inception in August, 2015.

57. Scully transferred the membership interests in KRC Properties on two separate occasions. The first of these was a transfer of the membership interests in the company to his

8

daughters, Crystal S. Torgrimson, Kathy Petty, Rae Ann Richie, on September 22, 2015. His daughters gave nothing in return for the membership interests.

58. Scully then made a second donation of the membership interests to other relatives, Sean Torgrimson (Son in Law), Lynze T. Belle (Granddaughter), Jeffrey A. Richie (Son in law), on April 14, 2016.

59. After the first and second donation of membership interests in KRC Properties, Scully retained a membership interest in the company from 100% to approximately 14%.

## Vehicles

60. In 2016 Scully transferred a 2008 White Chevy Tahoe to Crystal Scully Torgrimson, his daughter.

61. Scully admits receiving nothing in return for the 2008 White Chevy Tahoe.

62. In 2015 Scully transferred a 2013 Black Toyota Corolla to Lynze Belle, his granddaughter.

63. Scully admits receiving nothing in return for the 2013 Black Toyota Corolla.

64. In 2015 Scully transferred a 2003 White Chevy Silverado to his grandson Noah Michael Belle.

65. Scully admits receiving nothing in return for the 2003 White Chevy Silverado.

66. In 2017 Raymond Scully transferred a 2013 Silver Chevy Silverado to Jonathan Scully, his nephew.

67. In 2016 Raymond Scully transferred a 2011 Silver Ford F150 to his brother Wayne Scully.

## 2016 Financial Statement

68. On or about November 8, 2016, in connection with litigation in the U.S. District Court for the Western District of Louisiana, Coastal Commerce entered into a Stipulation with Scully, SM Energy, and certain of its affiliated entities.

9

69. The Stipulaton provided that "The Bank will proceed to obtain deficiency judgments against guarantors but will not execute any judgment until after the vessels are sold and the deficiency amount is thereby determined."

70. The Stipulation also provided "Raymond Scully individually and SM Energy, LLC will produce their most current financial statements to the Bank within ten days of the date of this agreement."

71. On or about December 22, 2016, Raymond Scully submitted a second Personal Financial Statement to Coastal Commerce.

**E. Concise statement of those issues of law on which there is agreement**

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

> (A)false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
> (B)use of a statement in writing—
> (i)that is materially false;
> (ii)respecting the debtor's or an insider's financial condition;
> (iii)on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv)that the debtor caused to be made or published with intent to deceive[.]

Fraud is defined in our Civil Code as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. C.C. art. 1953. There are three basic elements to an action for fraud: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to the other party; and (3) the resulting error must relate to a circumstance substantially influencing the other party's

10

contractual consent. *Shelton v. Standard/700 Associates*, 01–0587, p. 5 (La.10/16/01), 798 So.2d 60, 64. See La. C.C. arts. 1953, 1955.

The Civil Code states "Fraud may also result from silence or inaction." Civil Code art. 1953. However, in order to find fraud from silence or suppression of the truth, there must exist a duty to speak or disclose information. *Greene v. Gulf Coast Bank*, 593 So.2d 630, 632 (La. 1992).

**F.  Concise statement of those issues of fact which remain to be litigated;**

1.  Whether the Financial Statement contained information regarding the following properties:

    **The Roxie Property:** Land and improvements, rural property in Franklin Mississippi, 10 Beach Rd., Roxie Mississippi, owned jointly with David Acosta. (the "Roxie Property") Stated value: $1,230,000.

    **The Stephensville Property**: Land and improvements, residential property in St. Martin Parish, located at municipal address 1028 Landry Rd., Stephensville, Louisiana. Stated Value: $400,000.

    **The Gulfport Property:** Residential property in Gulfport, Mississippi, located at municipal address 2217 Swetman Blvd, Gulfport, Mississippi. Stated value: $135,000.

    **The Porter Property:** Residential property in Porter, Texas located at municipal address 3314 Abbey Field Lane, Porter Texas. Stated value: $160,000.

    **Lake Palourde Property:** Industrial lot in Amelia Louisiana where Scully's business, A&B Industries of Morgan City , previously operated. Approximate value: $100,000.

2.  Whether SM Energy missed certain payments toward principal in 2014 as originally agreed upon in the SM Energy Loan, but asked for extensions and other accommodations to make interest only payments.

3.  Whether, on November 7, 2014, SM Energy requested and received a deferral of amounts due, including making interest only payments in November and December 2014.

4.  Whether, in January 2015, SM Energy requested and received an additional 4-month period of interest only payments.

5. Whether, from June, 2015 to December, 2015, SM Energy made certain payments toward principal and interest, but never made any of the required principal payments thereafter.

6. Whether SM Energy failed to make payments as required beginning in January, 2016, and no deferrals or accommodations were granted for these events of default.

7. Whether, on April 7, 2016, Coastal Commerce provided notice of default to SM Energy and to Raymond Scully by certified mail.

8. Whether a default letter that was sent to SM Energy, LLC at its P.O. Box in Morgan City was signed for by David Acosta on April 11, 2016.

9. Whether a default letter was sent to Torie Theriot of the Neuner Pate law firm, which acted as counsel for both SM Energy and Raymond Scully, and which was signed for on April 18, 2016.

10. Whether Scully provided reasonable notice to Coastal Commerce of the sale of the Roxie Property.

11. Whether Scully provided reasonable notice to Coastal Commerce of the donation of the Stephensville Property.

12. Whether Coastal Commerce was provided reasonable notice of the transaction involving the Gulfport property.

13. Whether the SM Energy Loan was in default at the time of the transfer of the Dayton Property (March 2016).

14. Whether Coastal Commerce was provided reasonable notice of the transaction involving the Porter Property.

15. Whether the SM Energy Loan was in default at the time of the transfer of the KRC Properties membership interests, April 14, 2016

16. Whether Coastal Commerce Bank reasonably relied upon the Personal Guaranty of Raymond Scully and the Personal Financial Statement provided by him.

17. Whether Coastal Commerce Bank was damaged by Raymond Scullys' transfers of assets.

18. Whether Scullys' misstatements contained in the 2013 Personal Financial Statement were material.

19. Whether Scullys' misstatements contained in the 2016 Personal Financial Statement were material.

20. Whether the Scullys withdrew substantial amounts of cash from their bank accounts to avoid debts to Coastal Commerce.

21. Whether Scullys' actions constitute a willful and malicious injury to Coastal Commerce Bank or to the property of Coastal Commerce Bank.

22. Whether Raymond Scully received any cash consideration from Jonathan Scully for the 2013 Silver Chevy Silverado.

23. Whether Raymond Scully received any cash consideration from Wayne Scully for the 2011 Silver Ford F150.

24. Whether Raymond Scully undertook a duty to provide information to Pedestal Bank when he provided the Personal Financial Statement to Coastal Commerce Bank.

25. Whether the Scullys made the transfers of property with the intent to move assets beyond the reach of creditors.

26. Whether the Scullys made the transfers of property for legitimate business or estate planning purposes.

27. Whether the Scullys' transfer of properties constituted a "fraudulent conveyance scheme."

13

28. Whether the Scullys intended to create as a declaration of will or by contract a duty to notify Coastal Commerce Bank immediately about any changes in their financial condition

29. Whether the Scullys intended to deceive Coastal Commerce Bank by checking no to the question of "Have either you or your spouse ever been adjudged a bankrupt?"

30. Whether the financial statement given in 2016 resulted in an extension, renewal or refinancing of credit

31. Whether the financial statement given in 2016 contained errors because of an intent to deceive Coastal Commerce Bank

32. Whether the Scullys had knowledge of SM Energy's defaults or payment issues prior to April 2016.

33. Whether the Scullys had any control over SM Energy's finances prior to April 2016.

**G. Concise statement of those issues of law which remain for determination by the Court.**

Whether "Actual fraud" under §523(a)(2)(A) includes a case in which the debtor engaged in schemes to transfer property to avoid a debt, even if the scheme was effected without false representations to the creditor. *Husky Intern. Electronics, Inc. v. Ritz,* 136 S.Ct. 1581, 1590 (2016).

Regarding fraud by silence, whether "Courts have consistently found that a debtor's silence regarding a material fact equates to a material representation sufficient to support a denial of discharge." *In re Austin*, 2009 WL 3193167, at *12 (Bankr. W.D.La. Oct. 2, 2009); *In re Hanson*, 432 B.R. 758, 772 (Bankr. N.D. Ill. 2010).

**H. List of all exhibits to be offered at trial with notation of all objections thereto;**

   **Pedestal Bank Exhibits:**

1. SM Energy Corporate records

2. Scullys' Responses to Pedestal Bank Discovery

14

3. SM Energy Promissory Notes

4. Scully Personal Guaranty

5. Scully Affidavit (MSJ)

6. Scully Personal Financial Statement

7. Default letters from Coastal Commerce Bank

8. Certified Mail Return 1

9. Certified Mail Return 2

10. Certified Mail Return 3

11. Certified Mail Return 4

12. SM Energy Deferral

13. SM Energy Loan Payment History

14. Raymond Scully's Letter re: Plan (May 2016)

15. Roxie Settlement Statement

16. Act of Donation (Stephensville Property)

17. Act of Sale, May 2016 (Gulfport)

18. Closing Statement Gulfport Property May 2016

19. Act of Sale, May 2017 (Gulfport)

20. Closing Statement Gulfport Property May 2017

21. Scully Bank Statements – Whitney Bank

22. Scully Bank Statements – Midsouth Bank

23. Acosta Family Rentals Corporate documents

24. Dayton Property Records - Transfer

25. Deed of Trust and Promissory Note– Dayton Property

26. Letters to Jared & Joshua Cheramie

27. KRC Property transfer doc

28. KRC corporate records

29. Scully 2016 Personal Financial Statement

30. Stipulation in U.S. D.C. W.D. La. Action

31. A.R. Global Statement

32. Scullys Tax return 2015

33. Scullys Tax return 2016

34. Coastal Commerce Internal Memorandum.

## Rebuttal & Impeachment Exhibits (not in binder)

35. Rule 2004 deposition testimony of Raymond and Shirley Scully and all exhibits thereto.

36. Raymond Scully's correspondence to Coastal Commerce Bank.

37. Mike Felder correspondence.

38. Documents reflecting Raymond Scully and Shirley Scully's interests in property and transfers thereof.

39. David Acosta's bank records including from Patterson State Bank and Midsouth Bank.

40. A&B Industries of Morgan City corporate records.

41. All pleadings and documents filed in Bankr. No. 18-50993 including schedules, statements of financial affairs and related documents.

42. All pleadings and documents filed in Bankr. No. 17-51452 (A&B Industries) including schedules, statements of financial affairs and related documents.

16

43. All pleadings affidavits and other documents filed, or adduced in discovery in prior litigation involving Coastal Commerce Bank, Pedestal Bank, Raymond Scully, Shirley Scully, David Acosta, or Acosta Family Rentals.

44. Documents produced by Pedestal Bank in discovery.

45. Documents produced by Raymond and Shirley Scully in discovery.

46. Documents produced in response to any third party subpoena in this case.

**Scullys' Exhibits:**

1. Loan Deferral 11/7/14 - to be filed under seal.

2. Loan Deferral 2/24/16 - to be filed under seal

3. SM Energy Balance Sheet 2015

4. Fax from Coastal Commerce Bank 4/8/16

5. Workout proposal from Ray Scully 5/5/16

6. Emails to and from Trent Oliver and Jeff Coreil 6/28/19

7. Coastal Commerce Bank Commercial Credit Approval Memorandum 2014 - to be filed under seal

8. Charge-off Template and Watchlist Loan Management Report 5/16 - to be filed under seal

9. John A. Lancon Personal Statement 7/15 - to be filed under seal

10. Documents necessary for impeachment or rebuttal

11. Any documents listed or admitted by Pedestal Bank

I.   **List of all witnesses who may be called at the trial and those witnesses who will be called at the trial:**

Pedestal Bank Witnesses:

WILL CALL:

17

Raymond Scully: All matters to which he testified at Rule 2004 deposition, and all allegations contained in the Plaintiff's Complaint that he denied or otherwise contests.

Shirley Scully: All matters to which she or Raymond Scully testified at Rule 2004 deposition and all allegations contained in the Complaint, and all allegations contained in the Plaintiff's Complaint that she denied or otherwise contests.

Johnny Lancon: Testimony regarding the business of SM Energy, LLC, dealings with Raymond Scully, and related matters.

Trent Oliver: Scully Personal Guaranty, Scully Personal Financial Statement, the harm caused to Coastal Commerce Bank by Scully's financial activity.

MAY CALL:

David Acosta: Testimony regarding cash and property received from Raymond Scully, dealings with Raymond Scully, and related matters.

Rae Ann Scully: Testimony regarding receipt of interest in real estate, receipt of other property from Raymond Scully, other dealings with Raymond Scully.

Crystal Scully: Testimony regarding receipt of interest in real estate, receipt of other property from Raymond Scully, other dealings with Raymond Scully.

Kathy Petty: Testimony regarding receipt of interest in real estate, receipt of other property from Raymond Scully, other dealings with Raymond Scully.

Jared Cheramie: Testimony regarding receipt of interest in real estate, receipt of other property from Raymond Scully, other dealings with Raymond Scully.

Joshua Cheramie: Testimony regarding receipt of interest in real estate, receipt of other property from Raymond Scully, other dealings with Raymond Scully.

Scullys' Witnesses:

Raymond Scully and Shirley Scully – will testify concerning all matters related to their financial situation, the boat loan, the transfers, all allegations contained in the complaint and defenses asserted in the answer.

Rae Ann Scully Richie - may testify concerning any transfers from the Scullys that involved her.

Kathy Scully Petty – may testify concerning any transfers from the Scullys that involved her.

Crystal Torgrimson - may testify concerning any transfers from the Scullys that involved her.

Sean Torgrimson – may testify concerning any transfers from the Scullys that involved her.

Jared and Joshua Cheramie – may testify concerning the rental and sale of the house in Texas to them.

David Acosta – may testify concerning any transfers from the Scullys that involved him or Acosta Family Rentals.

Andy Reed - may testify concerning any transfers from the Scullys

Any witness listed or called by Pedestal Bank.


Submitted this September 9, 2019.


/s/ *Joseph P. Briggett*
STEWART F. PECK (#10403)
JOSEPH P. BRIGGETT (#33029)
601 Poydras Street Suite 2775
New Orleans, LA 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195
Email:                    speck@lawla.com;
jbriggett@lawla.com
*Counsel for Pedestal Bank*

        */s/ Tom St. Germain*

Tom St. Germain
Attorney / Member
Weinstein & St. Germain, LLC
1414 N.E. Evangeline Thwy.
Lafayette, Louisiana 70501
(337) 235-4001

19